**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DISTRICT**

CHERNIN'S SHOE OUTLET, LLC,          *

               Plaintiff,          *

         v.          *          Civil Action No. AW-04-3893

SECURITY SQUARE ASSOCIATES,          *
MDR SECURITY SQUARE LIMITED
PARTNERSHIP, MDR SECURITY          *
SQUARE, INC., BARE FEET
ENTERPRISES, INC., and MEIR DUKE,          *

           Defendants.          *
                     ****

### MEMORANDUM OPINION

Chernin's Shoe Outlet ("Chernin's" or "Plaintiff") brings this action against Defendants Security Square Associates ("SSA"), MDR Security Square Limited Partnership ("SSLP"), MDR Security Square, Inc. ("SSI") (collectively, "Security Square"), Bare Feet Enterprises, Inc. ("Bare Feet"), and Meir Duke ("Duke") alleging federal violations of antitrust laws and state law violations of antitrust, breach of contract, and unfair competition laws of Maryland.

Currently before the Court are Security Square's Motion to Dismiss Count IV of the Complaint [13], Security Square's Motion for a More Definite Statement [14], and Bare Feet and Duke's Motion to Dismiss, or in the alternative, for Summary Judgment [23]. The court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court makes the following determinations.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.      Factual Background

The following facts are taken in the light most favorable to the non-movant, Chernin's.  In June of 2004, Chernin's entered discussions with SSA to lease Space Number 723 at Security Square Mall, in Baltimore Maryland.   During these negotiations, Chernin's provided SSA with brochures showing Chernin's operations in other locations.  SSA subsequently agreed to prepare the lighting for Chernin's needs and to further prepare the premises for Chernin's occupancy.  After communications between Chernin's representatives and SSA's representatives, the provisions that the parties agreed to were integrated into an document entitled, "Shopping Center Lease" (the "Lease").

The terms in the Lease encompassed the entire agreement negotiated between Chernin's and SSA. According to the terms of the Lease, Chernin's was to pay SSA a monthly minimum rent of $6,250.00, with the first ninety days of the minimum rent abated.  On October 14, 2004, SSA sent Chernin's unsigned copies of the Lease to be signed by Chernin's.  On October 15, 2005, a SSA representative sent, via email, another copy of the Lease to a Chernin's agent.  SSA's representative explained that the corrected Lease, in addition to having a joint signature block, denoted areas for both parties to initial the bottom of each page of the document.  A Chernin's representative initialed each page of  the Lease, signed the signature block, and returned it to SSA via Federal Express.

On October 25, 2004, SSA notified Plaintiff that SSA decided not to execute the Lease and Chernin's would not be permitted to rent the space at Security Square Mall.  Prior to this communication, Duke, the owner and president of Bare Feet, contacted SSA and "approached Defendant SSA regarding

Chernin's Lease."[1]  Thereafter, SSA representatives informed Chernin's that the company would not be permitted to lease Space Number 723.

As competitors in the shoe retailing business, Bare Feet and Chernin's purchase shoes from several of the same vendors.  Duke contacted some of these vendors in an effort to coerce a boycott of Chernin's and to deny it access to a source of supplies.  Duke has also contacted certain vendors and threatened to cease purchasing shoes from these vendors if they continued to supply Chernin's with shoes.

On September 30, 2004, a certain vendor telephoned Chernin's asking Chernin's to withdraw their stock of certain shoes.  On October 1, 2004, Chernin's received another telephone call from that same vendor.  The vendor's representative stated that if Chernin's did not withdraw their stock, Duke would cancel all future Bare Feet orders with the vendor.

On October 1, 2004, a different vendor contacted Chernin's and explained that unless Chernin's was forbidden to stock a particular brand of shoes, Duke would cease paying for goods and possibly cancel all future orders with the vendor.  On October 6, 2004, Chernin's received an e-mail from that same vendor, asking Chernin's to pull back all of vendor's shoes.  Chernin's alleges that this request was made after the vendor was threatened by Duke.

On October 11, 2005, Chernin's received an email from a certain vendor that informed Chernin's that the vendor intended to cease supplying Chernin's with shoes because Bare Feet was an account "something much bigger than what [Chernin's could] imagine."  Subsequently, the vendor explained that it would not supply goods to Chernin's stores in Virginia, Maryland, Pennsylvania, and New Jersey.

---

[1]Chernin's alleges the content of this, and all other conversations to which Chernin's was not privy "by information and belief."

**II.      Procedural History**

On December 10, 2004, Chernin's filed a six count complaint in this Court against Security Square,

Bare Feet, and Duke alleging various antitrust and anti-competitive violations.  Specifically, Chernin's

claims that:  Security Square, Bare Feet, and Duke attempted monopolization of discount shoe market in

violation of the Sherman Act, 15 U.S.C. § 2 (Count I); Security Square, Bare Feet, and Duke conspired

to restrain trade in discount shoe market in violation of Sherman Act, 15 U.S.C. § 1 (Count II); Security

Square, Bare Feet, and Duke violated the Maryland Antitrust Act, Md. Com. Law Code Ann. §§ 11-201

*et seq.*(Count III); Security Square breached a contract by refusing to honor the terms of the Lease in

violation of Maryland state law (Count IV); Bare Feet and Duke violated Maryland law by intentionally

interfering with business relations (Count V) and; Bare Feet and Duke violated Maryland law by interfering

with contractual relations (Count VI).

On January 6, 2005, Security Square filed their Motion to Dismiss Count IV of Plaintiff's

complaint arguing that Chernin's fails to state a claim for which relief can be granted or, in the alternative,

Security Square is warranted judgment on the pleadings.  Contemporaneously, Security Square filed their

Motion for a More Definite Statement with regards to Counts I, II, and II of Plaintiff's complaint.  On

February 4, 2005, Bare Feet filed their Motion to Dismiss or, in the alternative, for Summary Judgment

arguing that Chernin's failed to plead the essential elements of its alleged antitrust claims and failed to state

a claim for which relief can be granted with regards to Counts V and VI.  As all motions are ripe and ready

for disposition, an Opinion will now be issued.

## STANDARD OF REVIEW

A.      Motion to Dismiss

Under Rule 12(b)(6), dismissal of a complaint for failure to state a claim is not appropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When ruling on a motion to dismiss under Rule 12(b)(6), a court must accept the allegations contained in the complaint as true. *DeBauche v. Trani*, 191 F.3d 499, 505 (4th Cir. 1999) (citations omitted). In adjudicating a 12(b)(6) motion, a court may only rely upon the allegations and records attached as exhibits or incorporated by reference in the complaint. *Simmons v. Montgomery County Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Here, Chernin's has attached Exhibits A and B, in the form of emails, to this complaint. Accordingly, the Court will construe these attachments under the Rule 12(b)(6) analysis.

B.      Motion for a More Definite Statement

A Motion for a More Definite Statement pursuant to Rule 12(e) "must be read in conjunction with Rule 8, which establishes the general rules for pleading." *Hodgson v. Virginia Baptist Hospital Inc.*, 482 F.2d 821, 822-23 (4th Cir. 1973). According to Rule 8(a), a complaint must contain three elements: (1) a statement that explains the grounds of the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for judgment. *Id.* at 822. A motion for a more definite statement will only be granted if the complaint is so vague or ambiguous that he cannot reasonably be required to frame a responsive pleading." *Id.* at 822-23 (quoting Fed. R. Civ. P. 12(e)).

## DISCUSSION

**I.      Security Square's Motion to Dismiss Count IV of the Complaint**

Security Square moves to dismiss Chernin's Breach of Contract claim, on the basis that the Lease, which was initialed and signed by Chernin's, did not constitute an offer to enter into a contract. Specifically, Security Square contends that because Security Square neither initialed nor signed the Lease, the parties were never bound by the terms specified therein.  The Court agrees.

Whether a contract is intended to be bound by the execution of a written agreement is steeped in the facts and circumstances of a particular case.  *Peoples Drug Stores, Inc. v. Fenton Realty Corp.*, 62 A.2d 273, 275 (Md. 1948).  If it appears that all the terms of the contract are agreed upon and the parties have nothing further to negotiate, and the parties understand a written contract would solely serve as a memorial, "the mere fact that the parties understood that parties understood that the contract should be reduced to writing does not leave the transaction incomplete and without binding force." *Id.*  However, if the facts indicate that the parties, after agreeing upon all the conditions of the contract, "intended to have them reduced to writing and signed before the bargain should be considered as complete, neither party will be bound until that is done, as long as the contract remains without any acts done under it on either side. *Id.* at 275-76.

Maryland courts have routinely and uniformly held that when negotiating parties contemplate a formal written agreement, the negotiations remain negotiations until they are reduced to writing and signed if provided spaces to sign.  *See Cambridge, Inc. v. Goodyear Tire & Rubber Co.*, 471 F. Supp. 1309, 1314 (D. Md. 1979) (citing *Kaufmann v. Adalman*, 47 A.2d 755 (Md. 1946).  A contract for the sale of any interest of land in Maryland must be made pursuant to the Maryland Statute of Frauds.  The

Maryland Real Property Code reads in part:

> No action may be brought on any contract for the sale or disposition of land or any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him.

Maryland Real Prop. § 5-104.

As previously mentioned, Chernin's contends that because absent from the Lease is any language that the Lease only became effective upon execution thereof, the parties had formed a binding contract by finalizing negotiations despite the lack of a written execution of the Lease by Security Square.

Chernin's argument, however, is inconsistent with the Maryland Statute of Frauds. Pursuant to the Maryland Real Property Code, a Lease had to be signed in writing or with accompanying memorandum to engender a binding document. Maryland Real Prop. § 5-104. Here, it is undisputed that Chernin's discussions with SSA to lease Space Number 723 involved an interest in land. Similarly, it is undisputed that the provisions that the parties agreed to were integrated into an document entitled, "Shopping Center Lease." Thus, the only issue here is whether the aforementioned lease was signed by the party to be charged. On this issue, Chernin's has alleged no facts demonstrating that any Security Square representative initialed each page or signed the signature block to execute the Lease.

Moreover, the express terms of the lease appear to reinforce the Statute of Fraud's requirement for execution. Paragraph 38 of the Lease, entitled "Offer," unambiguously states that "[t]he submission and negotiation of this Lease shall not be deemed an offer to enter the same by either party." Paragraph 40 of the Lease, entitled "Final Agreement," provides that Security Square retains the authority for "final approval" of any terms or conditions. Moreover, Exhibit B attached to the complaint, a copy of an email

from a representative of Plaintiff to a representative of Defendant, states that after correcting numbering on the lease:

> we can get the originals signed and on the way to you.  In any event, the goal is to fax a signature page to you today.

Taken together, the two aforementioned paragraphs of the lease and Exhibit B, indicate that the parties had not contemplated the mere drafting of the Lease to bind the parties to the Lease.  Thus, the contract contains language that is incompatible with Chernin's interpretation that the parties had formed a binding contract despite the lack of a written execution of the Lease.

Alternatively, Chernin's argues that even if the contract was not finalized without Security Square's signature, (1) the email correspondence between members of the parties sufficiently satisfies the Statute of Frauds because they are memorandums establishing the agreement; and (2)  that a signature to the lease was not required since the emails are an "electronic signature" as defined in the Maryland Uniform Electronic Transactions Act.  Again this Court cannot agree.

Maryland courts have lent guidance on how a separate memorandum may satisfy the Statute of Frauds:

> [A] memorandum, in order to make an enforceable contract within the Statute of Frauds, may be any document or writing, formal or informal, signed by the party to be charged or by his agent actually or apparently authorized thereto, which states with reasonable certainty, (1) each party to the contract either by his own name, or by such a description as will serve to identify him, or by the name or description of his agent, and (2) the land, goods or other subject-matter to which the contract relates, and (3) the terms and conditions of all the promises constituting the contract and by whom the promises are made.

*Schremp v. Dubrowin*, 257 Md. 263 A.2d 827, 831 (1970) (citing Restatement of Contracts § 207; *see also* Restatement (Second) of Contracts § 131.  Furthermore, the memorandum "may consist of two

writings if each indicates it relates to the same transaction and, though only one be signed by the party to

be charged, if the signed writing refers to the unsigned writing." *Id.* at 833 (internal citations excluded).

Under the Maryland Uniform Electronic Transactions Act, an electronic signature may satisfy a requirement

by law for a signature when logically associated to a record and created by a person with the intent to sign

the record. § 21-101(i).

Here, there is no allegation in the complaint, nor is there any evidence in the exhibits attached to

the complaint, that the transaction was one which the parties contemplated to be executed by electronic

means. On October 14, 2004, an employee of Security Square, sent via e-mail the following message to

a representative of Chernin's:

> Here is the Lease. Please note that we added initial blocks to each page. Please have the
> original signed and sent to us for execution.

The Security Square representative sent a "corrected lease" with initial lines for each party to sign. On the

other end, Chernin's agent printed the "corrected lease" to be signed by company representative Bramlette.

Thus, This message and the other e-mails[2] that Chernin's Complaint referenced reinforce Security Square's

contention that the parties contemplated the formal signing of the Lease as the means of execution.

Additionally, neither exhibit attached to the complaint indicates the position, authority, or contains the

"signature" of either the sender or the recipient who could bind the parties to an agreement as required by

§ 21-101(i). As such, the correspondences do not indicate the parties contemplated this transaction to be

---

[2]On October 15, 2004, the Security Square employee sent an email to the Chernin's employee writing, "Here's the corrected lease with initial lines. Please confirm receipt by e-mail or phone." Ten minutes later the Chernin's employee responded, "I've received the lease. Thanks. I'm printing it for Mr. Bramlette's return to the office." Again, this email demonstrates that the parties did not contemplate execution of the lease by electronic means.

signed and executed electronically as required by the Maryland Uniform Electronic Transactions Act § 21-104(b).

Furthermore, Chernin's reliance on *Lamle v. Mattel, Inc.*, 394 F.3d 1355 (Fed. Cir. 2005), is misplaced.  In *Lamle,* an inventor of a board game negotiated with Mattel, a toy company, and orally agreed upon all of the terms of a licensing agreement.  *Id.* at 1357-58.  An agent for Mattel transcribed an e-mail that "substantially repeated terms agreed to [orally at a meeting]," and sent the memorandum to a representative of the board game inventor.  *Id.*  The email stated that the terms "have been agreed in principal [sic] by Mattel subject to contract."  *Id.*  The salutation with a Mattel employee's name appears at the end of the email.  *Id.*  The inventor then sent two drafts of a licensing agreement to the toy company, but neither got signed.  *Id.*  The Court in *Lamle* held that, under California law, the email correspondence may satisfy the memorandum requirement under the Statute of Frauds, assuming there was a binding oral agreement and the email included all material terms of the agreement.  *Id.*  at 1362.

The *Lamle* case is clearly distinguishable from the instant case. In *Lamle*, Mattel did not challenge the authority of its agent to bind it.  Here, as previously mentioned, neither exhibit attached to the complaint indicates the position, authority, or contains the "signature" of either the sender or the recipient who could bind the parties to an agreement.  Moreover, the email in *Lamle* substantially repeated the orally agreed upon terms of the parties.  Unlike *Lamle*, the parties here contain no statement of the orally agreed upon terms.  Quite the contrary, the emails here clearly state that the *originals* must be signed and sent for execution, therefore demonstrating that parties contemplated the formal signing of the Lease as the means of execution.  Therefore, *Lamle* is inapplicable to the instant facts.

In short, in Maryland a contract for an interest in land that provides for the signature of the parties

must be written and signed for execution.  Upon viewing the proposed Lease and email correspondences it is determined that Chernin's cannot prove a set of facts that warrant a breach of contract claim. Accordingly, Count IV of Chernin's Complaint is dismissed.

## II.      Security Square's Motion for a More Definite Statement

Security Square contends that Chernin's should be required to more definitely state the specific identity of the individuals and dates at issue in Counts I, II, and III of the Complaint.  In particular, Security Square argues that because they have "no knowledge" of the allegations brought forth in the Complaint and have not received fair notice of "the underlying basis of the claims which would permit them to respond to the Complaint."  The Court cannot agree.

Rule 12(e) allows a party to make a motion for a more definite statement where "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party can not reasonably be required to frame a responsive pleading." *Fed. R. Civ. P. 12(e)*.  "The test is whether it is reasonable to require defendants to respond to the [pleading]." *Doe v. Bayer Corp.*, 367 F.Supp.2d 904, 917 (M.D. N.C. 2005).  Rule 12(e) must be read in connection with Rule 8, which sets the minimum pleading requirements. *Hodgson v. Virginia Baptist Hosp., Inc.*, 482 F.2d 821, 822 (4th Cir. 1973).

Rule 8(a) requires that a pleading contain (1) "a short and plain statement of the grounds upon which the court's jurisdiction depends;" (2) "a short and plain statement of the claim showing that the pleader is entitled to relief;" and (3) "a demand for judgment." *Fed. R. Civ. P. 8(a)*.  The Supreme Court has recently reaffirmed that Rule 8(a)'s "simplified notice pleading standard" merely requires a statement that "gives the Defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citation omitted).  As the Fourth Circuit has

recently stated, Rule 8(a) only requires:

> requires the pleader to disclose adequate information regarding the basis of his claim for
> relief as distinguished from a bare averment that he wants relief and is entitled to it.
> Undoubtably great generality in the statement of these circumstances can be permitted so
> long as the defendant is given fair notice of what is being asserted against him.

*Chao v. Rivendell Woods, Inc.*, __ F.3d __, WL 1669389 *4 (4th Cir. 2005). Accordingly, "[u]nder

this relaxed standard, unmeritorious claims and attempts at surprise are eliminated not by motions to

dismiss, but rather through liberal discovery rules and summary judgment motions." *Id.*

As applied here, the basis for jurisdiction has been clearly set forth in Chernin's complaint as

Section 4 of the Sherman Act, 15 U.S.C. § 4, and 28 U.S.C. § § 1331 and 1337(a). Furthermore, the

three counts at issue via Security Square's current motion clearly contains specific demands for relief, i.e.,

permanent injunction, maximum penalties, compensatory damages, punitive and/or treble damages and

attorneys' fees and costs. Accordingly, the first and third requirements of Rule 8(a) are clearly satisfied.


Security Square argues that Plaintiff contends in a conclusory fashion that Security Square did not

enter into a lease with Plaintiff for commercial space at Security Square mall. Specifically, Security Square

contends that paragraph 16 of the complaint is inadequate to establish a "causal connection" between the

communication(s) between the Defendants and Security Square's refusal to enter into a lease with Plaintiff,

and therefore counts one, two, and three should be dismissed.

Paragraph 16 of the complaint states:

> On information and belief, Defendant DUKE, having nine (9) stores in Maryland,
> approached Defendant SSA [the Security Square Defendants] regarding Chernin's lease.
> SSW representatives confirmed to Chernin's that they communicated with Defendant
> Duke regarding Chernin's operations.

It is apparent from the above allegations that Plaintiff has positively alleged that representatives of Defendants communicated with Defendant Duke regarding Plaintiff's operations. Although Plaintiff has presented an affidavit, attached to the complaint, that testified to the occurrence of the communication, at this preliminary time, Plaintiff appears not be know the exact nature of those communications. Nevertheless, the fact that Plaintiff alleges that those communications occurred, coupled with and subsequent thereto, Defendants disavowed their lease arrangements with Plaintiff (paragraph 17 of complaint), indicates an appropriate nexus between the two acts to establish an antitrust conspiracy amongst the Defendants. Moreover, paragraphs 20 through 27 of the complaint set forth various instances alleging that Defendant Duke took actions against Plaintiff in violation of antitrust laws. If proven, a reasonable juror could find that Defendants were participants in Duke's efforts to carry out the charged combination and conspiracy.

In short, this Court finds that counts I through III of Plaintiff's complaint, all sounding in some form of antitrust, have given Security Square fair notice of the claims being asserted against it. Accordingly, Security Square's Motion for a More Definite Statement is denied.

### III.    Bare Feet and Duke's Motion to Dismiss or, in the alternative, for Summary Judgment

### A.    Rule 12(b)(6) Conversion

Defendants Bare Feet and Duke have filed a Motion to Dismiss, in the alternative, Motion for Summary Judgment. When "matters outside the pleadings are presented to and not excluded by the court, [a 12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56,

and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion

by Rule 56." Fed.R.Civ.P. 12(b).  In interpreting the requirements of this rule, the Fourth Circuit has held

that the term "reasonable opportunity" requires that all parties be given "some indication by the court . . .

that it is treating the 12(b)(6) motion as a motion for summary judgment, with the consequent right in the

opposing party to file counter affidavits and pursue reasonable discovery." Gay v. Wall, 761 F.2d 175,

177 (4th Cir. 1985) (citations and quotations omitted).  However, when a party is "aware that material

outside the pleadings is before the court," the party has notice that a Rule 12(b)(6) motion may be treated

as a motion for summary judgment.  Id.  However, notification that a Rule 12(b)(6) motion may be

converted is only one of the requirements of Rule 12.  Before a Rule 12(b)(6) motion may be converted

and summary judgment granted, the court must be satisfied that the nonmoving party "has . . . had the

opportunity to discover information that is essential to [its] opposition." Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 250 n.5 (1986) (citations omitted).

In the instant case, Plaintiff had adequate notice that Defendant's motion might be treated as one

for summary judgment.  The motion's alternative caption and attached materials are themselves sufficient

indicia.  See Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998).  Still,

notice is not enough.  Once notified, a party must be afforded a "reasonable opportunity for discovery"

before a Rule 12(b)(6) motion may be converted and summary judgment granted.  Gay, 761 F.2d at 177.

Here, there has been no discovery in this case. Until the facts have been developed by way of appropriate

discovery procedures, the Court will not undertake to consider whether summary judgment should be

entered in favor of either party.  Therefore, the Court will therefore analyze Bare Feet and Duke's motion

under a 12(b)(6) standard, and accordingly, the Court's analysis will be limited to the sufficiency of the

pleadings combined with those materials referenced in the Complaint.

### B. Attempted Monopolization of Discount Shoe Market (Count I)[3]

Bare Feet and Duke argue that Chernin's has failed to plead an essential element of a Federal antitrust claim, namely the overt act with the specific intent to monopolize. Specifically, Bare Feet and Duke argue that the allegation that Duke "contacted vendors and told them he would not buy shoes from them if they continued to sell shoes to Chernin's" fails to demonstrate intent to monopolize. The Court will examine Defendants' Motion to Dismiss regarding each Count in turn.[4]

Count I of the Complaint alleges violations of Section 2 of the Sherman Act by all Defendants for attempted monopolization of the discount shoe market in the Baltimore area. "[T]o demonstrate attempted monopolization a plaintiff must prove (1) that the defendant has engaged in predatory or anti-competitive conduct with; (2) a specific attempt to monopolize; and (3) a dangerous probability of achieving monopoly power." *Spectrum Sports*, 506 U.S. at 456.

As to the anticompetitive conduct prong, the Complaint alleges, and Chernin's referenced materials indicate, that Duke, the owner and president of Barefeet, approached Security Square to discuss Chernin's proposed operations in Security Square Mall. Subsequent thereto, Plaintiff alleges that Security Square

---

[3]The following analysis also applies to Count III of the Complaint as the Maryland Antitrust Act is the Maryland version of Sections 1 and 2 of the Sherman Act. Md. Com. Law Code Ann. §§ 11-201 *et seq*. *See Martello v. Blue Cross and Blue Shield of Maryland, Inc.*, 795 A.2d 185, 194 (2002) (explaining that the Maryland Antitrust Act is modeled after the federal Sherman Antitrust Act).

[4]Although Defendants do not differentiate between Chernin's separate antitrust claims in their brief, there exists a legal distinction between a violation of § 1 and § 2 of the Sherman Act. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002).

refused to honor the lease that had been negotiated between Security Square and Chernin's for space in the Security Square Mall.  If proven, a reasonable fact finder could infer that the subsequent refusal by Security Square to honor the lease was prompted by the urging of Duke.  Moroever, Chernin's alleges that Duke had been contacting certain mutual vendors of Chernin's and Bare Feet in an attempt to coerce those vendors into ceasing supplying products to Chernins.  Specifically, Chernin's alleges that one such vendor requested, after contact by Duke, that Chernin's cease selling that vendor's product in Virginia, Maryland, Pennsylvania, and New Jersey.  The foregoing acts, if proven, clearly constitute anticompetitive actions. *See Dickson*, 309 F.3d at 206 ("The [Sherman Act] directs itself not against conduct which is competitive, even severely so, but against conduct which unfairly tends to destroy competition itself.  Thus, an inquiry into the lawfulness of the restraint begins by identifying the ways in which a challenged restraint might possibly impair competition.") (internal citations excluded).

Chernin's has also sufficiently pleaded the second and third elements of a Section 2 violation, namely the specific intent to monopolize and dangerous possibility of achieving monopoly power in Paragraphs 30 and 31 of the Complaint.  If proven, intent, therefore, can be inferred from the aforementioned allegedly anticompetitive conduct engaged by Duke, i.e, after contact by Duke, a vendor requested that Chernin's cease selling that vendor's product in Virginia, Maryland, Pennsylvania, and New Jersey.[5]  Moreover, Chernin's presented affidavits and e-mail correspondences indicating an intent to

---

[5] Defendants also allege, without any citation to authority, that the facts alleged in count one of the complaint are "insufficient as a matter of law."  In this regard, Defendants focus almost entirely on the issue of intent.  However, as the facts above demonstrate, the requisite intent is indicated by Duke's alleged anticompetitive acts against Chernin's which appear to have the purpose of inhibiting Chernin's ability to compete with Bare Feet.

disrupt Chernin's ability to compete with Bare Feet.[6] Accordingly, the Court, finds Chernin's has alleged sufficient facts in count one that warrant discovery.

### C.   Conspiracy to Restrain Trade in Discount Shoe Market (Count II)

"To establish a violation of Section 1 of the Sherman Act, [a plaintiff] must prove the following elements: (1) a contract, combination, or conspiracy; (2) that imposed an unreasonable restraint of trade." *Dickson v. Microsoft Corp.*, 309 F.3d 193, 202 (4th Cir. 2002).  At trial, a plaintiff must prove the defendants "had a conscious commitment to a common scheme designed to achieve an unlawful objective." *Virginia Vermiculite, Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 281 (4th Cir. 2002) (quoting *Monsanto Co. v. Spray-Rite Service Corp.*, 465 U.S. 752, 764 (1984)).  Moreover, coercion in this regard is not undermined "by the fact that one or more of the co-conspirators acted unwillingly, reluctantly, or only in response to coercion." *Dickson,* 309 F.3d at 205.  "A plaintiff can offer direct or circumstantial evidence to prove concerted action." *American Chiropractic Association, Inc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 225-26 (4th Cir. 2004).  Lastly, "[u]nlike the proof required to establish a conspiracy to monopolize under section 2, a specific intent to create a monopoly is not required under section 1." *Broadcast Music, Inc. v. Hearst/ABC Viacom Entertainment Services*, 746 F.Supp. 320, 325 (S.D.N.Y. 1990); (quoting *International Distribution Centers, Inc. v. Walsh Trucking Co., Inc.*, 812 F.2d 786, 793 (2nd Cir. 1987).

Under the first prong of Sherman Act Section 1 analysis, the Court will only dismiss Chernin's

---

[6]Chernin's received the following e-mail from a supplier: "Regarding the issue with bare feet. I would like you to please understand my situation with this account.  It is something much bigger than what you can imagine.  I will always give you the benefit of my closeouts but please Gary the goods cannot be brought to: va, md, pa, nj.

claims if the Complaint does not allege facts that, if proved, would indicate a conspiracy or combination and an unreasonable restraint of trade.

Here, Plaintiff alleged that Bare Feet and Duke conspired or acted in a common scheme with the Security Square Defendants to preclude Chernin's from leasing a store at Security Square Mall. Chernin's has provided an affidavit that attests to a communication between Defendants Security Square and Duke. This affidavit, coupled with Chernin's correspondences with suppliers that cited Bare Feet as the reason for pulling back supplies, *see supra* footnote 5, indicate Chernin's may be able to prove the first element of a Sherman Act Section 1 violation.[7]

Chernin's Complaint also sufficiently pleads the second prong of a Sherman Act Section 1 violation. In the complaint, Chernin's allege a concerted action by Bare Feet Defendants and the Security Square Defendants to keep Chernin's out of the Baltimore market. In particular, Chernin's alleges that the communications between the Defendants resulted in the refusal of Security Square to honor the lease. Additionally, Chernin's alleges that Duke was in the process of attempting to keep vendors from supplying Chernin's with product. Such actions are sufficiently allege an attempt to restrict competition and decrease output, two effects of an artificial restraint that which Section 1 of the Sherman Act was meant to prevent. *See Continental Airlines, Inc. v. United Airlines, Inc.*, 277 F.3d 499, 508 (4th Cir. 2002) ("The

---

[7] Defendants argue that since they are legally not separate entities for antitrust purposes, they cannot be found liable under conspiracy or combination claim under Section 1 of the Sherman Act. This argument is unconvincing. Clearly, the Security Square Defendants and Bare Feet Defendants are without question separate and distinct entities, and Plaintiff has alleged that both were co-actors with regard to the alleged combination to keep Chernin's from obtaining a lease in the Baltimore area. Accordingly, there are at least two separate entities involved in the alleged combination, conspiracy, or contract, and therefore Defendants have provided no reason for the Court to dismiss this antitrust claims set forth.

Supreme Court, however, long ago established that Section 1 only outlaws restraints that are 'unreasonably restrictive on competitive conditions.'" ) (quoting *Standard Oil Co. v. United States*, 211 U.S. 1, 58 (1911).

**D.      Interference with Business Relations (Count V)**

Bare Feet and Duke argue that "Plaintiff has failed to state a claim [of interference with business relations] against Meir Duke and Bare Feet, Defendants because . . . [they] have not engaged in any underlying wrongful act." Because they cannot prove this essential element of the Maryland tort action, Duke and Bare Feet argue, Count V of the Complaint should be dismissed.

In Maryland, the elements of tortious interference with business relationships are: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting. *Natural Design, Inc. v. The Rouse Co.*, 485 A.2d 663, 675 (1984) (citing *Willner v. Silverman*, 71 A. 962 (1909).

Malice means legal malice, "a wrongful act done intentionally without just cause or excuse." *McCarter v. Chamber of Commerce*, 94 A. 541 (1915). Chernin's has adequately alleged facts that satisfy all four elements of the Maryland tort action. Here, Chernin's complaint alleges two wrongful acts (1) convincing Security Square not to honor the terms of a Lease with Chernin's despite Duke and Bare Feet's awareness of the contractual and business relationships by virtue of their conversations with Security Square and the various shoe vendors, and (2) certain vendors informing Chernin's that htey could no longer supply it with shoes, both were intentional interferences by Duke and Bare Feet done to damage Chernin's

sales in the Baltimore area.  Bare Feet and Duke's argument that because there is no antitrust violation there cannot be a tortious interference of business relations has no merit, and their Motion to Dismiss Count V is denied.


**E.      Interference with Contractual Relations (Count VI)**

As explained above, Security Square did not have a contractual relationship with Chernin's. Tortious interference with contractual relations under Maryland law requires the existence of a contract. *Fowler v. Printers II, Inc.*, 598 A.2d 794, 802 (1991).  Therefore, Count VI of the Complaint, must be dismissed.

**F.      Defendants' Alternative Argument**

Alternatively, Bare Feet and Duke argue that even if Chernin's pleadings were sufficient to state an antitrust action, the facts Chernin's alleges "on information and belief" are simply not true as indicated by the affidavit of Duke.  This argument is unpersuasive.

As previously mentioned, the Fourth Circuit has emphasized that "great generality in the statement of these circumstances can be permitted so long as the defendant is given fair notice of what is being asserted against him." *Chao* __ F.3d __, WL 1669389 at *4; *see also Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 72-3 (1st Cir. 2000) ("While defendants may prefer highly detailed factual allegations, a generalized statement of facts is adequate so long as it gives the defendant sufficient notice to file a responsive pleading.").  Accordingly, "a plaintiff can make allegations *either* on the basis of personal knowledge or on 'information or belief.'" *Langadinos, 199 F.3d at* 72-3.

This Court finds that Chernin's allegations in the complaint give Defendants fair notice of the claims

being asserted against them.  It is clearly apparent from the plain language of the complaint that counts one

through three sound in antitrust, count v sounds in intentional interference with business relations under

Maryland law.  Moreover, Chernin's has presented to the Court affidavits of Robert C. Bramlette and Gary

Siegel, which set forth the basis upon which the allegations, based on information and belief, were made

against defendants.  In particular, the affidavits show that Chernin's, through its representatives and

employees, possess knowledge that Duke discussed Chernin's business with Security Square, and that the

vendors contacted by Duke had been threatened by Duke into taking negative actions as to the Chernin's.

## IV.     Bare Feet and Duke's Motion to Strike Affidavits

Bare Feet and Duke argue that "[t]he Court should strike the affidavits attached to Plaintiff's

opposition because they are based entirely upon hearsay and rest entirely upon conclusory assertions and

are thereby inadmissible in these proceedings."  Hearsay is defined in Federal Rule of Evidence 801(a) as

"a statement other than one made by the declarant while testifying at the trial or hearing, offered to prove

the truth of the matter asserted."  Here, the affidavits at issue were presented for two distinct purposes: (1)

to indicate Plaintiff's basis of knowledge for the allegations of the complaint made upon "information and

belief," and (2) to demonstrate the need for further discovery in this case.  Because Chernin's affidavits

were not submitted for the truth of the matter asserted, this Court finds that the hearsay rule is inapplicable.

Bare Feet and Duke further argue that the affidavit of Robert Bramlette should not be considered

by this Court because he is both a witness and an attorney participating in the case.  This Court finds,

however, that there exists no basis for the disqualification of Bramlette's affidavit.  The Maryland Rule of

Professional Conduct 3.7(b) specifically allows that "[a] lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Here, Bramlette's affidvait poses no conflict of interest here, although a member of the firm representing Chernin's, Bramlette is not an advocate in this instant case. Bare Feet and Duke's Motion to Strike Affidavits is without merit.

Next Defendants claim that Bramlette's affidavit presents a violation of the attorney-client privilege. In particular, Defendants claim prejudice to their counsel by virtue of having presented facts opposed to those set forth in Defendants' affidavit submitted with their Motion to Dismiss. The attorney-client privilege, however, has never extended to non-represented or opposing parties or their counsel. Furthermore, Defendants are not even the parties that were represented by the attorney who revealed the same. Accordingly, Defendants' Motion to Strike Affidavits is denied.

## CONCLUSION

For all the aforementioned reasons, the Court **GRANTS** Security Square's Motion to Dismiss Count IV of the Complaint [13], **DENIES** Security Square's Motion for a More Definite Statement [14], **DENIES** Bare Feet and Duke's Motion to Dismiss, or in the alternative, Summary Judgment for Counts I, II, III, and **GRANTS** the aforementioned motion with respect to Count VI [23], and **DENIES** Bare Feet and Duke's Motion to Strike Affidavits [26]. Defendants are instructed to file an Answer or otherwise respond to the remaining claims in Plaintiff's complaint. Meanwhile, the Court will issue a scheduling Order. An Order consistent with this Opinion will follow.

August 22, 2005                                        /s/

Date                                  Alexander Williams, Jr.
                                      United States District Judge